UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

CIVIL ACTION NO. 20-191-DLB

CYNTHIA ANN LAWRENCE                                     PLAINTIFF

v.                     **MEMORANDUM OPINION AND ORDER**

KILOLO KIJAKAZI,
ACTING COMMISSIONER OF SOCIAL SECURITY         DEFENDANT

\* \* \* \* \* \* \* \* \* \* \*

## I.     INTRODUCTION

This matter is before the Court on Plaintiff Cynthia Ann Lawrence's Motion for Summary Judgment (Doc. # 16), filed pursuant to 42 U.S.C § 405(g), which allows Plaintiff to obtain judicial review of an administrative decision by the Social Security Administration. Defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration,[1] filed a Cross-Motion for Summary Judgment (Doc. # 18), and Plaintiff filed a Response (Doc. # 21). The cross motions for summary judgment are thus ripe for review. The Court, having reviewed the administrative record and the parties' motions, and for the reasons stated herein, **reverses** the Commissioner's decision, and **remands** the case to the Commissioner for further administrative proceedings in accordance with this Order.

---

[1]     During the pendency of this lawsuit, Dr. Kilolo Kijakazi replaced Andrew Saul as Acting Commissioner of the Social Security Administration. Mr. Saul, as former Commissioner, was named in the original Complaint (Doc. # 1) of this lawsuit, but the Social Security Administration as an entity remains the official defendant, and so the Court has substituted the current Acting Commissioner's name in the case caption.

1

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Cynthia Ann Lawrence is a 45-year-old resident of Lexington, Kentucky. (Tr. 169). Ms. Lawrence applied for disability benefits and supplemental security income from the Social Security Administration on April 18, 2016. (Tr. 205). In her application, Ms. Lawrence alleged disability beginning at the end of 2003, and continuing through the date of her application, based on "serious medical problems that include migraine headaches, asthma, and disorders of the thyroid gland . . . and also tachycardia, allergic rhinitis, dyslipidemia, fatigue, polycystic ovarian syndrome, anxiety, and depression." (Doc. # 16-1 at 2). Her application was initially denied on June 28, 2016 (Tr. 85-86), and then again upon reconsideration on October 26, 2016. (Tr. 87). Ms. Lawrence then made a written request for a hearing before an Administrative Law Judge ("ALJ"), and the SSA granted her request. (Tr. 138). The SSA held Ms. Lawrence's hearing on December 13, 2018 (Tr. 32-65), and the ALJ reached an unfavorable decision, finding that Ms. Lawrence was not disabled within the definitions provided by the Social Security Act. (Tr. 9). Ms. Lawrence filed an appeal with the SSA Appeals Council shortly thereafter. (Tr. 166). The Appeals Council denied her request for review (Tr. 1), which precipitated the filing of this action.

## III.    ANALYSIS

### A.     Standard of Review

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Colvin v. Barnhart*, 475 F.3d 727, 729-30 (6th Cir. 2007) (citing *Walters v. Comm'r of*

*Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997)). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981)). Courts are not to conduct a de novo review, resolve conflicts in the evidence, or make credibility determinations. *Id.* (citing *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)). Rather, the Court must affirm the Commissioner's decision as long as it is supported by substantial evidence, even if the Court might have decided the case differently. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). In other words, if supported by substantial evidence, the Commissioner's findings must be affirmed even if there is evidence favoring Plaintiff's side. *Id.*; *see also Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). In determining whether the Commissioner's conclusion is supported by substantial evidence, courts "must examine the administrative record as a whole." *Cutlip*, 25 F.3d at 286.

    **B.**    **The ALJ's Determination**

To determine disability, an ALJ conducts a five-step analysis. *Walters*, 127 F.3d at 529. Under Step One, the ALJ considers whether the claimant is engaged in substantial gainful activity; Step Two, whether any of the claimant's impairments, alone or in combination, are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform the past relevant work; and Step Five, whether a significant number of other jobs exist in the

national economy that the claimant can perform.  *See id.* (citing 20 C.F.R. § 404.1520). The burden of proof rests with the claimant for Steps One through Four.  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)).  At Step Five, the burden of proof "shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity."  *Id.* (citing *Bowen*, 482 U.S. at 146 n.5).

Here, at Step One, the ALJ concluded that Ms. Lawrence had not engaged in any substantial gainful activity during the claimed disability period (from 2003 to 2016), as Ms. Lawrence had only held a few part-time jobs.  (Tr. 15).  At Step Two, the ALJ identified Ms. Lawrence's thyroid disorder, asthma, and migraine headaches as being "severe" under the governing regulations.  (*Id.*).  At Step Three, the ALJ made a brief determination that Ms. Lawrence's severe ailments did not meet or medically equal any impairments in the Listing of Impairments.  (*Id.* at 19).  At Step Four, which determined the outcome of the case, the ALJ concluded that Ms. Lawrence possessed the residual functional capacity ("RFC") to perform "less than a full range [of] light work," with some limitations. (*Id.* at 20).  Based on that RFC, at Step Five, the ALJ further determined that a significant number of jobs exist within the national economy that Ms. Lawrence would be able to perform.  (*Id.* at 24).  Based on the ALJ's crafting of Ms. Lawrence's RFC, and the availability of jobs that would cater to her limitations, the ALJ's final determination was that Ms. Lawrence was not disabled within the definitions provided by the Social Security Act.  (*Id.* at 25).

**C.     Review**

4

In her Motion for Summary Judgment, Ms. Lawrence argues (1) that the ALJ's decision is not supported by substantial evidence because the ALJ failed to property evaluate the medical evidence in the record, and (2) that the ALJ improperly discounted her credibility during the review hearing. (Doc. # 16-1 at 1). After reviewing the administrative record, the Court has determined that Ms. Lawrence's first argument is compelling, and that it warrants the case being remanded for reconsideration.

> **1.  The ALJ's decision regarding Ms. Lawrence's residual functional capacity was not supported by substantial evidence.**

As previously stated, "substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286. The Court cannot weigh the evidence or re-litigate the case, but only examine the sufficiency of the evidence, even if the Court may have decided the case in a different manner. *See Her*, 203 F.3d at 389-90. If the ALJ's decision is supported by substantial evidence, the Court must affirm the decision. *Cutlip*, 25 F.3d at 286.

Here, Ms. Lawrence asserts that "the ALJ failed to properly evaluate the opinions of [her] treating doctors and made findings unsupported by the evidence of record" in determining Ms. Lawrence's RFC at Step Four. (Doc. # 16-1 at 6). More specifically, she posits that the ALJ's RFC rationale demonstrates a critical misunderstanding as to how migraines are diagnosed (*id.* at 9), and that the ALJ "made hatcheted, cherry-picked references [to the record] that were outright incorrect or otherwise taken out of context." (*Id.* at 6). Upon reviewing the record and Sixth Circuit case law, the Court agrees. Both of Ms. Lawrence's arguments, when taken together, clearly show that the ALJ's decision

5

was not supported by substantial evidence and thus, the case must be remanded for reconsideration.

First, with respect to the ALJ's misunderstanding of migraine diagnosis, Ms. Lawrence points out that the ALJ wrote that Ms. Lawrence had "no focal deficits upon examination" by her neurologist. (*Id.* at 9 (quoting Tr. 21)). Throughout the written opinion, the ALJ points out seemingly "normal" medical diagnostics that seem to refute Ms. Lawrence's statements about her medical condition – the ALJ's statement about the neurologist's report is only one of many. (*See also e.g.*, Tr. 21 ("Even with this documentation, there is not a lot of diagnostic expertise applied at these visits, nor is there significant therapeutic decision-making at these evaluations. . . . The diagnosis of migraine appears based on claimant's subjective allegations with very little clinical and no objective correlation.")). Otherwise, the ALJ repeatedly notes that "the objective evidence of record does not support the alleged frequency and severity of [Ms. Lawrence's] symptoms." (*E.g.*, Tr. 22).

But according to Ms. Lawrence, the diagnosis of migraines generally always requires a process of elimination which results in many "normal" diagnostic results, as migraines do not show up on brain scans or in typical diagnostic tests. (Doc. # 16-1 at 9 n.2). Ms. Lawrence is correct, as even the Sixth Circuit has recognized the atypical nature of migraine diagnosis since 1988. *McCormick v. Sec'y of Health and Human Servs.*, 861 F.2d 998, 1000 (6th Cir. 1988) ("[U]nlike other types of headaches, migraines cannot be traced back to an objectively determinable source." (internal quotations omitted)). The Social Security Administration has also issued guidance on the topic, writing that "[w]hile imaging maybe useful in ruling out other causes of headache symptoms, it is not required

6

for a primary headache disorder diagnosis." *Evaluating Cases Involving Primary Headache Disorders*, SSR No. 19-4p (Aug. 26, 2019).

Accordingly, courts have reasoned through migraine-related Social Security appeals while recognizing that in many cases, migraine patients have normal scans and lab results, and so the types of evidence needed to support a disability claim may look differently in migraine cases than in other cases. For example, in *Brown v. Commissioner of Social Security*, the court noted that "because there is no medical test available to confirm the presence or severity of migraine headaches, it was improper for the ALJ to rely on the absence of such [objective] evidence to discount plaintiff's testimony." No. 17-13137, 2018 WL 7078577, at *11 (E.D. Mich. Dec. 18, 2018), *R. & R. adopted*, 2019 WL 265771 (E.D. Mich. Jan. 18, 2019).

In *Brown*, the ALJ declined to find disability in very similar circumstances to the instant case, noting that the claimant's medical records appeared to be normal, which the ALJ interpreted as a "lack of objective evidence" that precluded disability. *Id.* On appeal, the district court explained, however, that the ALJ's simple noting of a "lack of objective evidence" wasn't substantial enough to survive the district court's review:

> With some minor variation, Plaintiff's tests typically returned normal results. But neither the ALJ nor Defendant asks the crucial question: so what? Are these findings reliable evidence that chronic migraines did not render Plaintiff unfit for work?

*Id.* at * 12 (internal quotations omitted). In other words, the *Brown* court held that a lack of objective evidence alone, with no other explanation or analysis, is not substantial evidence to support an ALJ's decision in a migraine case.

To be clear, though, the Sixth Circuit has held that *some* objective evidence is necessary to support a claimant's subjective claims of debilitating headaches. *Long v.*

7

*Comm'r of Soc. Sec.*, 56 F. App'x 213, 214 (6th Cir. 2003) (citing *McCormick.*, 861 F.2d at 998)). However, in *McCormick*, the Sixth Circuit noted that "[t]he *only* evidence in the record supporting [the Claimant's] claim was the testimony of claimant herself[.]" 861 F.2d at 1003 (emphasis added). In short, the bar seems to be low, as in *McCormick*, the only evidence present at all was the claimant's own testimony. Conversely, the administrative record in this case is significantly fuller than the record in *McCormick*, as it is replete with medical records demonstrating multiple diagnoses of migraine headaches and clinical documentation of their debilitating effect on Ms. Lawrence. (*See, e.g.,* Tr. 730, 902, 946, 959, 969, 984). While the ALJ is correct that the migraine diagnoses are generally based on Ms. Lawrence's "subjective allegations" (Tr. 23), it has been established that "subjective allegations" may be the only way to obtain an affirmative diagnosis of migraine headaches. Moreover, it could easily be said that every medical diagnosis begins with a "subjective allegation" – a patient's description of symptoms to a doctor -- and Ms. Lawrence's complaints about her medical condition have been documented for almost 20 years.

Furthermore, as the *Brown* court aptly stated, "the [Sixth Circuit] has not yet looked at the precise issue of *what* constitutes relevant 'objective' evidence in this context." 2018 WL 7078577 at *14 (emphasis added). With respect to fibromyalgia, another medical condition that is not "confirmed by objective testing," the Sixth Circuit has held that "medically accepted and recognized signs" of the disease can constitute objective evidence in a Social Security case. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 244 (6th Cir. 2007).[2] Even though the Sixth Circuit has not directly written on migraine cases

---

[2] The *Rogers* court also noted that a doctor's "process of diagnoses elimination" was

in the past nineteen years, the *Brown* court used the Sixth Circuit's reasoning on fibromyalgia to posit that the same approach would be taken today with respect to migraines. This Court agrees, and notes that courts beyond the Sixth Circuit have applied the same type of reasoning to migraine cases. In the Fifth Circuit, when discussing the medically accepted and recognized signs of migraines, one court stated:

> Thus, in cases involving complaints of disabling pain due to migraine headaches, courts look to other objective medical signs to determine whether the claimant's complaints are consistent with the existence of disabling migraine pain, including whether the claimant's migraines are accompanied by drowsiness, dizziness, nausea, vomiting and blurred vision, whether the claimant has been prescribed medication for migraines and the associated symptoms of nausea and vomiting, whether the plaintiff is sensitive to light or sound, whether the claimant has received continuing and regular treatment for migraines – including outpatient and emergency treatment – and whether the claimant's symptoms are consistent with those of migraine headaches.

*Wiltz v. Barnhart*, 484 F. Supp. 2d 524, 533 (W.D. La. 2006). The Fifth Circuit's analysis also aligns with the Commissioner's own guidance, as in SSR No. 19-4p, "objective evidence" with respect to primary headache disorders is defined as "signs, laboratory findings, or both." The record in the instant case, as previously stated, is replete with these medically accepted and recognized signs of migraines. The ALJ's dismissal of these medically accepted and recognized signs as "subjective" suggests a lack of substantial evidence to support his decision.

Moreover, notwithstanding the issues surrounding objective evidence, the ALJ in this case still fails to explain how or why the evidence (or lack thereof) supports his RFC

---

"neither acknowledged nor discussed by the ALJ," demonstrating another error in the ALJ's decision making process. 486 F.3d at 244. The same could be said about the ALJ's omission of migraine diagnostic procedures here.

9

determination. "[T]he evidence does not show more than mild to moderate clinical findings that would preclude performing a range of light exertional work," he writes, without providing any citations to the record. (Tr. 22). Beyond that conclusion, the other paragraphs are focused only on refuting the credibility of the reports provided by Ms. Lawrence's treating physicians, and of Ms. Lawrence herself. (*See* Tr. 21-24). In other words, the ALJ failed to address the "crucial question" identified by the *Brown* court: how, if at all, do the claimant's migraines affect her capacity to perform gainful work. Furthermore, the ALJ's failure to address migraine-specific effects is especially noteworthy considering Ms. Lawrence's testimony at the hearing that her migraines are debilitating for days at a time, resulting in her being unable to maintain a work schedule. (Tr. 41); *see also Gibson v. Saul*, 548 F. Supp. 3d 659, 665 (N.D. Ohio 2021) (noting that the ALJ failed to discuss "any estimation of the frequency with which [claimant's] migraines would require her to be absent from work," which warranted remand).

Additionally, the Court has observed that at Step Three, the ALJ summarily concluded that Ms. Lawrence "has a history of migraine headaches but the record is absent evidence of a neurological condition that satisfies the criteria of any subsection of Listing 11.00" with no meaningful analysis. (Tr. 19). Courts and the Commissioner have clarified that at Step Three, while migraine headaches are not a listed impairment, they are generally evaluated as a medical equivalent to epilepsy, listed at § 11.03. *See, e.g., Beerman v. Comm'r of Soc. Sec.*, No. 2:16-CV-896, 2018 WL 1187804, at *7 (S.D. Ohio Mar. 7 2018); SSR No. 19-4p (detailing a medical equivalency analysis for headache disorders). On remand, the ALJ should complete Step Three of the analysis in accordance with the Commissioner's guidance in SSR No. 19-4p.

10

Lastly, and most problematic for the Commissioner, the Court notes that the ALJ appears to have misstated the record at several points in his written opinion, which severely undercuts a finding of substantial evidence when considered in conjunction with the previously discussed points. At Tr. 21, the ALJ writes that "there is not a lot of diagnostic expertise applied at these visits, nor is there any significant therapeutic decision making at these evaluations" in reference to Ms. Lawrence's medical records contained in Exhibit F. However, the Court's review of Exhibit F shows that the records, more than 700 pages in length, are replete with diagnostic information, changes in medication and therapeutic strategy, and physician commentary on Ms. Lawrence's clinical history and medical progression throughout. (*See* Tr. 359-1076).

The ALJ also writes at Tr. 21 that "the claimant used a device like a TENS unit on her forehead to aid in aborting migraines and indicated in July 2017 her migraines overall were better," to suggest that Ms. Lawrence's migraines had improved due to the device. However, on the page cited by the ALJ, Tr. 984, the notes from a July 14, 2017 office visit state that the unit had resulted in "no notable improvement yet but still using." Furthermore, at Tr. 1177, notes from an office visit in May 2018 stated that the device "has made some migraines worse instead of better and has triggered migraines when there wasn't one." In short, the record does not support the ALJ's assertion that the TENS unit improved Ms. Lawrence's migraine symptoms, and it certainly does not support the notion that the migraines "overall were better" after using the device.

With respect to a neurological evaluation by Gerald Eichhorn, MD, the ALJ writes that "the claimant endorsed a longstanding history of migraines more than two times a week with mild headaches daily yet she had no focal deficits upon examination[.]" (Tr.

21). However, Dr. Eichhorn's report notes under Review of Systems that Ms. Lawrence was "[p]ositive for headaches" under the Neurological category (Tr. 730), that his diagnosis was "intractable migraine without aura and without status migrainosus" (Tr. 732), and that Ms. Lawrence's "headaches have now significantly worsened[.]" (Tr. 733). While the report does state that Ms. Lawrence's neurologic exam was normal with respect to her mental status, cranial nerves, and reflexes (Tr. 732), these diagnostics are not instructive to migraine diagnosis, and the ALJ's sidestepping of Dr. Eichhorn's findings and notes is not suggestive of substantial evidence to support his findings.

The ALJ also writes that Ms. Lawrence "reported missing [a] follow-up with her neurologist and did not start Depakote as recommended." (Tr. 21). He does not provide a record cite to support that assertion, but Ms. Lawrence has provided Tr. 969, which states that she "missed [follow up] with neuro *when ill*." Again, the ALJ appears to have removed context to support his finding, which is not suggestive of substantial evidence. Furthermore, with respect to Depakote, the Court notes that at Tr. 1177, Ms. Lawrence's doctor wrote that Ms. Lawrence had "stopped taking the Depakote Dr. Smith prescribed because she felt it was ineffective." It is unclear from where the ALJ determined that Ms. Lawrence did not start Depakote, but if her doctor wrote that she stopped Depakote at one point, it flows logically that at an earlier point, she started taking Depakote, which is in direct contravention to the ALJ's uncited assertion that Ms. Lawrence never started taking Depakote.

With respect to a report from Jessica Wilson, APRN, the ALJ writes that Ms. Lawrence "declined suggested Botox therapy and examination findings were within normal limits." (Tr. 21). However, in APRN Wilson's report, the "examination findings"

are the same nerve status, mental status, and reflex checks that were previously normal in Dr. Eichhorn's report, and which are not instructive of migraine diagnosis, as previously stated. (Tr. 1182). Furthermore, on the same page, migraines are listed as an affirmative diagnosis alongside the normal examination findings. (*Id.*). With respect to the declination of Botox, at Tr. 1181, APRN Wilson wrote that Ms. Lawrence was "opposed to having any injections in her face which is primarily where her pain is." The ALJ points this out to posit that Ms. Lawrence was resistant to treatment for migraines (Tr. 21), but he omits that Ms. Lawrence "talked about trialing Namenda" with APRN Wilson during the same visit and moved forward with that treatment instead of Botox. (Tr. 1181). Again, the ALJ's omission of critical context is not indicative of substantial evidence to support his findings.

Lastly, again by misstating the record, the ALJ heavily discounts the RFC report of Ms. Lawrence's primary care physician, Keisa Fallin-Bennett, MD. (Tr. 23). Dr. Fallin-Bennett wrote that Ms. Lawrence's medical conditions are "debilitating," and the ALJ gave her opinion "little weight" because her findings were "based on subjective allegations" such as Ms. Lawrence's headache log. (*Id.*). While the Court declines to evaluate the ALJ's credibility determination, it does point out that in misstating the record, the ALJ's usage of Dr. Fallin-Bennett's report in making his RFC determination is not supported by substantial evidence.

The ALJ quoted Dr. Fallin-Bennett as writing that "migraines generally produce no change in neuro exam . . . extensive testing has not revealed any different cause." However, the ellipses used by the ALJ omit Dr. Fallin-Bennett's writing that "no change in neuro exam [is] important in that it rules out other causes of the symptoms." (Tr. 1187).

13

That omission is important, as Dr. Fallin-Bennett wrote her response in answer to the form's prompt to "[i]dentify the clinical findings and objective signs" of Ms. Lawrence's migraines. (*Id.*). While Dr. Fallin-Bennett appears to explain that the lack of neurological findings is instructive of a migraine diagnosis (which aligns with the previously discussed diagnostic procedure), the ALJ has distorted her statement to align with his findings. The ALJ also states that Dr. Fallin-Bennett's report is "inconsistent with neurological assessments" and cites Exhibit 22F, pg. 9 in support. However, Exhibit 22F, pg. 9 directly supports Dr. Fallin-Bennett's statement – it reports normal neurological exam results, but nonetheless lists migraines as an affirmative diagnosis. (Tr. 1182). The ALJ's conclusions are not supported by the record, and his distortion of medical reports is not availing of a finding of substantial evidence to support his RFC determination.

## IV.  CONCLUSION

In close, this case is reminiscent of the recent *Gibson* case, in which the Ohio district court wrote that the claimant's "treatment records [which] reflect frequent, chronic migraines meet her burden to establish a prima facie case that she is disabled. The Commissioner failed to carry his burden to demonstrate that [she] could perform substantial gainful employment despite her impairments." 548 F. Supp. 3d at 665 (citing *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)).

For all these reasons, the ALJ's decision is reversed, and the case is remanded to the Commissioner for further administrative proceedings in accordance with this Order.

Accordingly, **IT IS ORDERED**:

(1)  Ms. Lawrence's Motion for Summary Judgment (Doc. # 16) is **GRANTED**;

(2)  The Commissioner's Motion for Summary Judgment (Doc. # 18) is **DENIED**;

(3)     This matter is **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g) with instructions appropriately assess Ms. Lawrence's migraine headaches at Step Three and Step Four in a manner consistent with this Memorandum Opinion and Order; and

(4)     An accompanying Judgment shall be entered contemporaneously herewith.

This 9th day of March, 2022.



Signed By:
*David L. Bunning*
United States District Judge

K:\DATA\SocialSecurity\MOOs\Lexington\5-20-191 Lawrence MOO.docx